The next case, number 22-1945, Suzanne M. Brown v. Michael J. Penders, et al. At this time, would counsel for the appellant please introduce herself on the record to begin? Good morning, your honors. May it please the court, my name is Inga Parsons and I represent Susanna Brown. With the court's permission, I'd like to reserve four minutes of my time for rebuttal. Yes, you may. Thank you, your honor. Your honor, this case involves an ongoing problem that has almost become pandemic in itself in the criminal justice system, which is the BOP's failure to credit FSA credits and CARES credits correctly and accurately, which is resulting in the over-incarceration of many, many defendants. As my client stands here today, she's a nearly 10-year service officer in the Navy and the Marines. She continues to contest her innocence, but nevertheless, she has served out her sentence. She is on supervised release now, and there's not a whole lot that can be done, although we do have a suggestion to the court. What's frustrating is that my client is one of the most intelligent and persistent and fearless clients I've had in terms of trying to get relief, and it is a sad constitutional state when someone of that caliber is able to try to get the BOP to do the right thing, and they fail to do it. What happened in this case is that the FSA credits that she... Counsel, let's start with the fact that she was convicted. She was sentenced. She did not, on direct appeal, challenge her sentence. She is now released from custody and is serving supervised release, so you can't be seeking release from custody. You said you have a suggestion. I take it what you're saying is there is a specific form of relief, probably not presented in your opening brief, but which you now want to present to us. What is that specific form of relief? Yes, Your Honor, thank you. The reason for bringing it in the reply had to do with the government's response, where it appears that they concede that my client was released on supervised release on August 2, 2022. Could you get to the point and then tell us your reasons? My suggestion, Your Honor, is that presently her end release date was, we believe, based on BOP calculations, that her release date would be December 17, 2024. If she, in fact, were released on the supervised release as opposed to a custody-type sentence, she would be, her two-year term would end on August 1, because we have leap year of 2024, meaning this coming August 1, 2024. Now, I understand the government says, well, you could go to the underlying judge and request the early termination. However, in my experience, if you do not have the probation officer or the prosecutor on line for that, you will not get that relief. That may be your experience, but why haven't you tried that? I will do that, Your Honor, now that I have this free frame. Well, excuse me. She's been eligible since December? Yes, Your Honor. As I understand it, for you to go to the district court and seek this relief? We felt it would be futile, Your Honor, given the position of the government and the probation office. One of their reasonings is that she... Isn't it up to the judge? It is up to the judge, Your Honor, but my client's experience with that judge was that she felt that it would be highly futile to do that, given her positions during the case. However, now that the government has said in the responsive papers that they indicated that her supervised release term began on August 2nd, 2022, I think we're in a good position to make that argument, and I will be making that argument. To the extent that the court has an opinion on that, that might be helpful for that. That would require us to get into the merits, and the government says the case is moot because under existing precedent, there is no way this court can afford her any relief, but the district court could. So whether you view it as a mootness or she's foreclosed from her remedies under both the Johnson case from the Supreme Court and from First Circuit President Judge Howard's decision. Yes, and I understand that is the First Circuit position, although as actually brought up in the government's responsive papers, the Menzie and Dyer courts have taken that position. It's not necessarily a split in the circuits, but I think the whole thing comes down to this... Well, aren't we bound by First Circuit precedent? Ordinarily, but I do believe... So do you agree that Frances forecloses the relief you're asking for here? Unfortunately, at this stage, it does. It does, and it's unfortunate because the BOP, whether it takes a reprimand from this court, even if it's a dicta, to tell the BOP they have to do better. I mean, when you go through the cases that have come out with over-incarceration, it breaks your heart how many people have been over-incarcerated and the courts have to shrug, and it's unfortunate. I'm sorry, counsel. You've just conceded Frances forecloses relief. You know we're bound by the Frances decision. You have an alternate form of relief. Yes, Frances forecloses my request for the early determination of when the supervised release was. It does foreclose, crediting the amounts, but not making that determination. You saved four minutes for rebuttal. Yes, thank you, Your Honor. Thank you, counsel. At this time, if counsel for the government would please introduce himself on the record to begin. Good morning, Your Honors. This is the United States Attorney Trevor Taniguchi on behalf of Appellees, and may it please the court. The district court properly denied Ms. Brown's petition for habeas corpus, including that it was well within BOP's discretion to allocate First Step Act credits between early transfer and supervised release. The statute at issue 18 USC 3632 expressly permits earned time credits to be applied, quote, toward time in pre-release custody or supervised release, end quote. Ms. Brown acknowledged this permissiveness and the BOP's discretion below. But in truth, this court need not even reach the statutory interpretation argument, however, because petitioner has conceded, as she must, that being on supervised release mooted the request for early placement. She also seemingly has abandoned the argument for either start date of supervised release or the argument for immediately terminating the remainder of her supervised release term. With these concessions is our position that the claim is now moot. Petitioner has not provided any authority to prove a continuing case or controversy other than stating that because Ms. Brown is still serving her supervised release term, she must still have standing to pursue a habeas appeal. We believe that is incorrect based on an action challenging the sentencing issue. The petitioner must show some collateral consequence of the conviction to maintain the habeas appeal. Of course, as was alluded to previously, that's not to say that appellant wouldn't have standing to bring some form of action. But as mentioned in the government's brief, there may be other ways to obtain relief, such as a motion to modify or terminate her sentence. I'm just curious, the way you phrased it here and in your brief, there may be other ways such as, and then you point to one specific procedure, a statutory procedure, which your sister agrees can be followed. Do you have in mind some other procedure than that? No, Judge Lynch. I believe the proper procedure is to move beyond the mootness argument and address petitioner's other arguments. Most of these are novel and raised for the first time in the reply brief, and these arguments similarly are unpersuasive. First, the appellant has argued that probation's joinder is waived. By way of background, as the record makes clear, in the district court, the appellant, the appellee, and the court all agreed that probation was not a proper party to this action. Petitioner agreed to dismiss probation, and that's on page 214 of the joint appendix. Specifically, petitioner's counsel argued that the Bureau of Prisons is the proper party because, quote, the calculator of the First Step Act credits is the Bureau of Prisons, end quote. The proper party to this appeal is the BOP, and it has always been the BOP, because this matter concerns the calculation and application of First Step Act credits that was performed by BOP. That's what petitioner argued below. The error of the reasoning to argue that probation is now the proper party is that if we accept the appellant's legal position, then that means that BOP must be dismissed, and as a result, appellant would be arguing that the party who is responsible for calculating and applying First Step Act credits should be dismissed, and that probation should be tasked with responding for something with which it was wholly uninvolved. In fact, this is all the more reason why petitioner's claim is now moot, because the appeal pertains to actions taken by BOP for which no remedy can now be provided. She says the remedy that can be provided is a shortening of her supervised release sentence, and in Francis, the Francis court said, well, there are two lenses to look through, look at this request through. One could be as a request to end incarceration, which in Francis, the court said that's moot because the defendant there is out similar to here, but then the second lens was this, or you could see it on the back end as shortening that supervised release, and Francis then reached the merits of that question. Why doesn't that reasoning apply here in terms of the mootness? Yes, you're right. The reason why that would not apply is because the First Step Act does permit the shortening of a supervised release term in itself. It allows to start at an earlier date that has passed, and so there's, admittedly, I mean, this was a statute that was passed in December of 2018, so there's not much circuit authority, and we're really relying on district court authority, including many unpublished decisions from across the country, but consistently, courts have reached the decision that the First Step Act does not allow for a shortening of a and I would just go further on that argument about shortening the term of supervised release, moving it from August of 2024, or moving it to August of 2024 from December of 2024. This is untethered to the record and contrary to the plain language of the law. As far as can be ascertained from this argument, appellant claims that because she was released to home confinement in August of 2022, that should serve as a start date for a term of Home confinement is still considered a form of custody under federal law. The date of release is the expiration of the prisoner's term of imprisonment. That's pursuant to 18 U.S.C. 3624. Here, the CARES Act authorized the director of BOP to place prisoners in home confinement, and in fact, appellant cites that authority in her reply brief, but nonetheless, pursuant to 18 U.S.C. 3621, a person sentenced to a term of incarceration is committed to the custody of BOP until the But at a far more fundamental level, placement on home confinement is simply not the same as supervised release. They serve different purposes. Incarceration is punitive, whereas supervised release is intended to facilitate the integration of the violator back into the community while limiting further criminal conduct. Ms. Brown's term of supervised release runs to December of this year. To advance that end date would not be a mere correction, as appellant argues. Rather, it would require that this court finds that home confinement and supervised release are synonymous, which is contrary to the law and certainly one that the government has not had the opportunity to brief. So unless the court has any further questions, the government rests on the submissions, rests on the arguments in its submission and submits its argument. Thank you. Thank you, Your Honor. Thank you, counsel. At this time, if counsel for the appellant would please reintroduce herself on the record to begin. She has a four-minute rebuttal. Thank you. Two points. The first one in terms of discretion. The BOP does have discretion as to placement, but the BOP does not have discretion to disregard the application of the credits, which is what they did in this case. They overlapped them. Even in the government's response, they talk about how they can apply the FSA credits or the CARES credits or both. That doesn't mean they can overlap them and deprive my client of what amounted to a substantial amount of time. They did not follow their own rules. They said they would follow their own rules. They did not follow the intent of Congress. And under a CARTI, that should be of great concern. We are where we are, but Francis does not foreclose the application of what is a supervised release term. The government in their own papers says to this court that my client would have been able to apply for a reduction of the term of supervised release as of August 1st. And that makes sense because if you look at our reply where we talk about what it means about custodial, she was not in a custodial situation at that time to the point where it was incarceration. But supervised release. So if she was eligible to apply for supervised release in August, that is a concession that that's when her supervised release term started. So we're not asking for essentially a knockoff of that supervised release term, but an accurate determination of the supervised release term. Because it appears that BOP made an error in that as well. And the even if they do have different supervised release different goals, that doesn't mean that she should have to serve more supervised release time than she should. And that's what we're asking this court to acknowledge. And that's based in part on the government's position with respect to the supervised release term. That she has been on supervised release and effective as of August of 2022 and would have been eligible as the government says in their brief to go to ask for that reduction during that year. And that we believe is not foreclosed. We're not asking for a reduction. We're asking for essentially a correction. A correction of what happened in this case. Doesn't everyone agree here? It seems both parties agree that as we sit here now, you could be in the United States District Court in New Hampshire before the sentencing judge saying either BOP was wrong or even if they weren't wrong, it's unfair. And the sentencing judge would have discretion as to whether or not to shorten the term. Yes, Your Honor. And I do intend on doing that. But as I said before, we So why are we here? Well, we're here because we believe that that would have been futile, especially under When you say futile, you're just saying you're judge shopping. You think one judge is more likely than another to exercise discretion? No, Your Honor, because I think we were mistaken. I was mistaken in thinking, in believing that the supervised release term began in December of 2022. That is the problem. And that I believe Excuse me. That is the problem? That is my problem. I agree it's your problem. That is my problem. But even if that's the case, you could have gone in last December. That's where the futility argument was, is that at that point we were concerned. You could have gone then and you probably should have gone then. And again, that may be your problem, but it does not tell us why we should continue with this appeal. Well, I think that Your Honors have that authority and I think Yes, no, no, no. Discretionary authority to disregard the statute and the case law. The statute doesn't. The First Step Act does not allow the relief that you want. Not at this stage in the game, Your Honor, but with such great concern. And I know I'm sort of on my soapbox, but I see it so often is that the BOP really does need to do a better job of giving these credits and they just haven't done it. And somebody needs to tell me. OK, we encourage you. Yes, thank you, Your Honor. Thank you, counsel.